UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| SANDRA C.,[1] | : | Case No. 3:23-cv-242 |
| Plaintiff, | : | |
| | : | |
| vs. | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[2]

Plaintiff Sandra C. brings this case challenging the Social Security Administration's denial of her application for a period of disability and Disability Insurance Benefits. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), and the administrative record. (Doc. #7).

**I.    Background**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. § 423(d)(1)(A); *see Bowen,* 476 U.S. at 469-70.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

[2] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

In the present case, Plaintiff applied for benefits on September 28, 2020, alleging disability due to several impairments, including "arthritis, myofascial pain, fibromyalgia, retinal detachment, cervicalgia, ulnar neuropathy, and facet osteoarthropathy." (Doc. #7-6, *PageID* #259). After Plaintiff's application was denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Stuart Adkins. Thereafter, the ALJ issued a written decision, addressing four of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since August 14, 2020, the alleged onset date.

Step 2: She has the severe impairments of degenerative disc disease of the lumbar and cervical spine, mitral value prolapse, and melanoma.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work . . . with lifting and/or carrying twenty pounds occasionally and ten pounds frequently. She is able to stand and/or walk for about six hours per eight-hour workday and sit for six hours per eight-hour workday. She is limited to no climbing of ladders, ropes, and scaffolds. She is able to frequently stoop, kneel, and crouch with occasional crawling and climbing of ramps and stairs. She should avoid unprotected heights."

She is capable of performing her past relevant work as a contracting analyst and a composite job of supervisor and diagnostic analysist. This work does not require the performance of wok-related activities precluded by Plaintiff's residual functional capacity.

(Doc. #7-2, *PageID* #s 42-58). Based on these findings, the ALJ concluded that Plaintiff was not under a benefits-qualifying disability. *Id.* at 58.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-2, *PageID* #s 42-58), Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in

Opposition (Doc. #10), and Plaintiff's Reply (Doc. #11). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## III. Discussion

Plaintiff contends that "the ALJ failed to properly evaluate [her] pain complaints, which are well-documented throughout the medical record," noting that "'pain alone,' if caused by a medical impairment, may be severe enough to constitute a disability." (Doc. #8, *PageID* #s 841-42) (citing *Dozier v. Astrue*, 2012 WL 2344163, at *5 (N.D. Ohio Nov. 19, 2012)). She further argues that the ALJ failed in his analysis of certain medical records, medication, and daily

3

activities. *Id*. at 842-43. Finally, Plaintiff contends that her strong work history "should weigh in favor of giving weight to her subjective symptoms." *Id*. at 844.

The Commissioner maintains that "the ALJ properly considered the record as a whole, evaluated the opinions in accordance with the appropriate regulations, and incorporated the limitations supported by the record into the RFC finding."[3] (Doc. #10, *PageID* #849). According to the Commissioner, the ALJ properly assessed Plaintiff's conservative treatment, clinical findings, and inconsistent daily activities in his symptom severity analysis. *Id*. at 858-861. Finally, the Commissioner contends that Plaintiff's work history is both an impermissible reweighing of the evidence and, "while Plaintiff ha[s] a strong work history, the record does not show that Plaintiff's impairments prevented her from performing her past relevant work." *Id*. at 861-62.

When a plaintiff alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating those symptoms. *See* 20 C.F.R. § 404.1529; Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, *3 (October 25, 2017).[4] First, the ALJ must determine whether the individual has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms;

---

[3] The Commissioner construes part of Plaintiff's argument as challenging the ALJ's evaluation of the medical opinions and contends the ALJ properly evaluated all medical opinions and sources. (Doc. #10, *PageID* #s 852-58). Plaintiff, however, explicitly states she does not argue this, instead reasserting that she "contends that the ALJ failed to properly evaluate [her] pain and subjective symptom complaints . . . ." (Doc. #11, *PageID* #866). Therefore, the undersigned will only consider Plaintiff's symptom severity argument.
[4] SSR 16-3p, 2016 WL 1119029, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms," superseded SSR 96-7p and became applicable to decisions issued on or after March 28, 2016. *See* SSR 16-3p, 2017 WL 5180304 (October 25, 2017) (clarifying applicable date of SSR 16-3p).

4

(5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *3-8; *see also* 20 C.F.R. § 404.1529(c)(3).

In performing this assessment, the ALJ is not required to analyze all seven factors but must still show that he considered the relevant evidence. *Roach v. Comm'r of Soc. Sec.*, No. 1:20-cv-01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021). Indeed, the ALJ's assessment of an individual's subjective complaints and limitations must be supported by substantial evidence and be based on a consideration of the entire record. *Rogers*, 486 F.3d at 247; *see also Millsap v. Comm'r of Soc. Sec.*, No. 3:19-cv-197, 2020 WL 6275948, at *3 (S.D. Ohio May 27, 2020) (Ovington, M.J.), *report and recommendation adopted*, No. 3:19-cv-197, 2020 WL 6273402 (S.D. Ohio Oct. 26, 2020) (Rice, D.J.). Nonetheless, it remains the province of the ALJ and not the reviewing court to assess the consistency of subjective complaints about the impact of a plaintiff's symptoms with the record as a whole. *Rogers*, 486 F.3d at 247; *see also Huguely v. Comm'r of Soc. Sec.*, No. 3:08-cv-113, 2009 WL 816600, at *4 (S.D. Ohio Mar. 25, 2009) (Merz, M.J.), *report and recommendation adopted*, No. 3:08-cv-113, 2009 WL 816600 (S.D. Ohio Mar. 25, 2009) (Rice, D.J.). Therefore, "absent a compelling reason," an ALJ's credibility/consistency[5] determination will not be disturbed. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms but found her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the objective medical evidence and other evidence in the record. (Doc. #7-2, *PageID* #49). The ALJ explained

---

[5] Like the displacement of SSR 96-7p by SSR 16-3p, while "credibility" is no longer permitted in a "consistency" analysis, the prior case law remains applicable. *See Prichard v. Comm'r of Soc. Sec.*, No. 1:19-CV-573, 2020 WL 5544412, at *6 (S.D. Ohio Sept. 16, 2020) (Bowman, M.J.).

that Plaintiff's "unremarkable examinations, and limited, conservative treatment," as well as daily activities "demonstrat[ing] better physical and mental functioning than alleged" are "not consistent with symptoms as intense, persistent, or limiting as alleged." *Id*. at 51, 54.

Plaintiff argues that the ALJ committed several errors in his analysis of her symptom severity. (Doc. #8, *PageID* #s 842-44). Specifically, Plaintiff contends that the ALJ erred in addressing the following: Plaintiff's subjective complaints, the objective medical evidence, her medications and treatment, her daily activities, and her work record. *Id*.

As noted above, the ALJ found Plaintiff's statements to be inconsistent with the record as a whole. (Doc. #7-2, *PageID* #49). The ALJ demonstrated a full consideration of Plaintiff's subjective complaints by both listing them and by revealing their inconsistencies with his review of the objective medical evidence, Plaintiff's medications and treatment, the prior administrative medical findings, medical opinions, and her daily activities. *Id*. at 48-54; *see Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (recognizing that the ALJ's decision should be read as a whole). For example, Plaintiff alleged she would be unable to work at the computer due to "problems with motor skills in her hands", her wrists being "fragile and painful," and "pain down the arms and into her little fingers." (Doc. #7-2, *PageID* #48). However, the ALJ found that Plaintiff's medical records revealed that she "had full 5/5 strength in the bilateral upper and lower extremities." *Id*. at 49. Since Plaintiff's subjective complaints were inconsistent with the objective medical evidence and other evidence, the ALJ did not err in discounting them. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

Plaintiff also contends that the ALJ did not properly analyze a portion of the objective medical evidence. (Doc. #8, *PageID* #s 842-43). While the ALJ cannot rely on the objective medical evidence alone in his symptom severity analysis, the ALJ is mandated to seek and consider the objective medical evidence. *See* 20 C.F.R. § 404.1529(c)(2); *Gentry*, 741 F.3d at 726. The

6

ALJ detailed all the relevant medical records regarding Plaintiff's back and myofascial pain, cervical pain, arthralgias, myalgias, mitral valve prolapse, and melanoma. (Doc. #7-2, *PageID* #s 49-53). Plaintiff argues that the ALJ failed to properly consider the following medical evidence: (1) a May 2020 session with Plaintiff's orthopedic doctor where she was advised to stretch, walk around, and take frequent breaks to alleviate her neck and back pain; (2) a May 2021 positive reading for arthralgias, back pain, neck pain, and sleep disturbance; (3) a June 2021 imaging of the cervical spine revealing intervertebral narrowing and disc osteophyte complex formation; and (4) a June 2021 imaging of the lumbar spine showing multi-level intervertebral narrowing with mild multi-level facet hypertrophy. *Id*. However, the ALJ cited to all these records within his decision, weighing them with records of unremarkable examinations and conservative treatment to ultimately conclude that "[Plaintiff's] adequate functioning on examinations with some notations of good control over her impairments" and "[h]er unremarkable examinations and limited conservative treatment are not consistent with symptoms as intense, persistent, or limiting as alleged." (Doc. #7-2, *PageID* #s 49-51) (citing Doc. #7-9, *PageID* #549; Doc. #7-7, *PageID* #s 435, 449-50). Plaintiff does not sufficiently argue or point to evidence that the ALJ mischaracterized these medical records; thus, the undersigned finds the ALJ considered the objective medical evidence in his symptom severity analysis as directed by SSR 16-3p.

Plaintiff further argues that the ALJ failed to assess two of Plaintiff's treatment records in his decision. (Doc. #8, *PageID* #842). First, Plaintiff argues that, while the ALJ cited Plaintiff's drive from Florida to Ohio as an example of her pain not being as severe as alleged, he failed to note the telehealth visit record from that drive stating Plaintiff reported driving aggravated the pain in her cervical area and low back. *Id*. Although Plaintiff did report in her August 19, 2020 telehealth visit that "driving makes her cervical area and low back pain worse," Plaintiff's June 8, 2022 hearing testimony included that she still currently enjoyed the hobby of "tak[ing] long drives

7

and look[ing] at places that [she] hasn't seen before," which the ALJ cited.[6] (Doc. #7-7, *PageID* #378); (Doc. #7-2, *PageID* #54) (citing Doc. #7-2, *PageID* #80). Therefore, Plaintiff's testimony is consistent with the ALJ's conclusion that she could drive. (Doc. #7-2, *PageID* #54).

Additionally, Plaintiff contends that the ALJ failed to note a 2018 treatment record that Plaintiff had "frequent falls, including five falls in the past four months." Although Plaintiff did report frequent falls in a doctor's visit on January 31, 2018, Plaintiff also reported in her June 14, 2021 examination by the Division of Disability Determination that she had "occasional instability but has never fallen," a record the ALJ cites in his decision. (Doc. #7-7, *PageID* #396); (Doc. #7-2, *PageID* #50) (citing Doc. #7-7, *PageID* #445). Thus, contrary to Plaintiff's argument, the ALJ did in fact adequately consider these treatment records.

Plaintiff further contends that the ALJ failed to note an August 2020 telehealth visit treatment note that listed Plaintiff taking the medications "Tramadol, Gabapentin, Cymbalta, and Flexeril" into consideration in his symptom-severity analysis. (Doc. #8, *PageID* #842) (citing Doc. #7-7, *PageID* #378). However, the ALJ noted both Plaintiff's medication history and her conservative treatment. (Doc. #7-2, *PageID* #s 48-50); *see* 20 C.F.R. § 404.1529(c)(3)(iv)-(v). For example, ALJ discussed Plaintiff's decision to stop taking Tramadol, instead only taking over-the-counter acetaminophen for pain. (Doc. #7-2, *PageID* #48) (citing Doc. #7-6, *PageID* #287). The ALJ also noted Plaintiff was taking daily Neurontin and Flexeril in May 2021. *Id*. at 50. He indicated three separate occasions where "sacroiliac injections or diagnostic cervical facet injections" were discussed with and offered to Plaintiff, but Plaintiff deferred these for treatment by medication. *Id*. at 49. Moreover, the ALJ cited to a treating source that indicated Plaintiff had

---

[6] Although not related to Plaintiff's complaint of lower back pain caused by driving, the ALJ did note Plaintiff's testimony regarding wearing compression gloves while driving to reduce swelling in her hands from the drive, indicating he considered Plaintiff's full range of pain allegations regarding driving. (Doc. #7-2, PageID #48) (citing Doc. #7-2, PageID #73).

8

found some pain relief using topical agents. *Id*. at 50. Finally, while the ALJ noted that "[t]here is some indication that [Plaintiff] participated in physical therapy, used a TENS unit, and received emergency room care prior to the alleged onset date," the ALJ found "there is no indication that she participated in physical therapy during the period under review . . . [or] required emergency room or urgent care treatment for her pain during that time." *Id*. at 50-51. The ALJ specifically found Plaintiff's pain treatment "throughout the period under review" to be "limited [and] conservative." *Id*. at 51. Therefore, the ALJ properly analyzed and considered the medication and treatment factors in his symptom severity analysis under 20 C.F.R. § 404.1529(c)(3)(iv)-(v).

Plaintiff also contends that the ALJ erred in assessing her daily activities both by ignoring a 2019 doctor visit's report that she "is unable to do housework without assistance, unable to grocery shop without assistance, unable to prepare meals without assistance, and unable to drive without assistance" and by equating Plaintiff's "ability to participate in some activities of daily living with the ALJ's RFC to sustain her highly skilled past relevant work." (Doc. #8, *PageID* #842); (Doc. #11, *PageID* #s 867-68). However, the ALJ properly considered Plaintiff's activities. While Plaintiff did report that she was unable to perform daily activities without assistance in a July 15, 2019 doctor's visit, Plaintiff's follow-up visit was five days after she was hospitalized for acute appendicitis and underwent a laparoscopic appendectomy. (Doc. #7-7, *PageID* #s 389-91). In contrast, in her February 2021 Function Report, Plaintiff indicated that she could do housework without assistance (with the occasional exception of her sister's help carrying laundry upstairs), grocery shop without assistance, prepare meals without assistance, and drive herself, which the ALJ noted in his daily activities' analysis. (Doc. #7-2, *PageID* #s 53-54) (citing Doc. #7-6, *PageID* #268-70). Additionally, while Plaintiff is correct in asserting that an ALJ cannot equate limited daily activities to a finding of substantial gainful activity, the ALJ can consider daily activities as one factor in his symptom severity analysis, as instructed in SSR 16-3p. (Doc. #11, *PageID* #867)

9

(citing 20 C.F.R. § 404.1572(c)); *see Smith v. Comm'r of Soc. Sec.*, No. 1:09-CV-526, 2010 WL 5464889, at *7 (S.D. Ohio Aug. 5, 2010) (Wehrman, M.J.) ("the ALJ also properly considered that [Plaintiff] engaged in a variety of daily activities, and it was appropriate for him to consider this factor in making his credibility finding."[7]). Plaintiff's daily activities included regular exercise, including walking and biking, running errands, light housework, and driving, all of which the ALJ took into his consideration of Plaintiff's alleged pain symptoms. (Doc. #7-2, *PageID* #s 53-54); 20 C.F.R. § 404.1529(c)(3)(i); *see also Julie W. v. Comm'r of Soc. Sec.,* No. 1:19-CV-573, 2022 WL 3334244, at *7 (S.D. Ohio Aug.12, 2022) (Litkovitz, M.J.) ("While plaintiff argues that the ALJ overstated plaintiff's activities of daily living, the ALJ properly considered this evidence as one factor in evaluating plaintiff's alleged symptom severity").

Finally, Plaintiff asserts that her strong work history indicates that "[i]t is highly unlikely that she would have stopped working to collect substantially less money in disability benefits unless she was truly unable to work" and that her strong work history "should weigh in favor of giving weight to her symptom allegations." (Doc. #8, *PageID* #844). The Commissioner maintains that "Plaintiff's work history d[oes] not outweigh the other factors considered by the ALJ, including the opinion evidence, Plaintiff's minimal medical treatment, and the unremarkable clinical findings." (Doc. #10, *PageID* #862). While work history is a factor in the symptom-severity analysis, it is only one factor in the ALJ's multi-factor analysis. *See* 20 C.F.R. § 404.1529(c)(3); *Tina M. S. v. Comm'r of Soc. Sec.*, No. 1:22-CV-236, 2023 WL 2788830, at *15 (S.D. Ohio Apr. 5, 2023) (Litkovitz, M.J.). The ALJ is not required to discuss every factor, only consider all the *relevant* evidence to support his conclusion. *Roach,* 2021 WL 4553128, at *10–11 (emphasis added). As related above, the ALJ thoroughly discussed Plaintiff's subjective

---

[7] Like the displacement of SSR 96-7p by SSR 16-3p, while "credibility" is no longer permitted in a "consistency" analysis, the prior case law remains applicable. *See Prichard v. Comm'r of Soc. Sec.*, No. 1:19-CV-573, 2020 WL 5544412, at *6 (S.D. Ohio Sept. 16, 2020) (Bowman, M.J.).

10

complaints, the objective medical evidence, medication, treatment, and daily activities in his symptom-severity analysis. (Doc. #7-2, *PageID* #s 48-54). Plaintiff has failed to allege how her strong work history undermines the substantial evidence supporting the explained factors of the ALJ's symptom severity analysis. *See Biederman v. Comm'r Soc. Sec.*, No. 1:20-CV-356, 2021 WL 5504550, at *13 (S.D. Ohio Nov. 24, 2021) (Litkovitz, M.J.) ("Plaintiff, however, fails to explain how [his] alleged work record and earnings cast doubt on the ALJ's weighing of [his] subjective allegations of pain and limitations."). Therefore, Plaintiff has not met her burden to present a "compelling reason" to disturb the ALJ's consistency determination. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

Accordingly, for the above reasons, Plaintiff's Statement of Errors is not well taken.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The ALJ's non-disability decision be affirmed; and
2. The case be terminated on the Court's docket.

July 25, 2024                                    *s/Peter B. Silvain, Jr.*
                                                                       Peter B. Silvain, Jr.
                                                                       United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).